UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

MARY LOU PALEY,                                              Case No. 06-10601

          Debtor(s).
---------------------------------------------------------
In re:

ROSEMARY A. MILLINGTON,                          Case No. 06-12046

          Debtor(s).
---------------------------------------------------------
APPEARANCES:

| | |
|---|---|
| Rodriguez & Doern, PLLC | James E.D. Doern, Esq. |
| *Attorneys for the Debtor Mary Lou Paley* | |
| 100 West Avenue | |
| Saratoga Springs, NY 12866-2141 | |
| | |
| Ehrlich & Arcodia | Marc S. Ehrlich, Esq. |
| *Attorneys for the Debtor Rosemary A. Millington* | |
| 64 Second St. | |
| Troy, NY 12180 | |

Andrea E. Celli, Esq.
*Chapter 13 Standing Trustee*
350 Northern Blvd.
Albany, NY 12204

Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

  The matters before the court are the confirmations of the proposed Chapter 13 plans of

Mary Lou Paley ("Paley") and Rosemary A. Millington ("Millington") (collectively "Debtors").

Andrea E. Celli, Chapter 13 Trustee ("Trustee"), filed an objection to each of the Debtors'

1

plans.[1]  Both of these case were filed after October 17, 2005.  Accordingly, these cases are governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective on October 17, 2005.  The court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), (b)(2)(L), and 1334.[2]  The facts in these cases, although different, are along the same lines and are summarized below.

## FACTS

### Paley (Case No. 06-10601)

The facts of the *Paley* case are uncontested and contained in a joint stipulation filed on November 7, 2006.  (No. 11.)  As a result of continuing harassment from creditors, Paley filed a voluntary petition for relief under Chapter 13 on March 22, 2006.  On the same day, Paley filed her plan, schedules, and Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"[3]) known as the means test.

Prior to commencing her Chapter 13 case, Paley filed a Chapter 7 petition on December 10, 1998 (Case No. 98-17962) and received a discharge on April 6, 1999.  As a result, Paley was barred from filing another case under Chapter 7 and receiving a second Chapter 7 discharge until

---

[1] Because of the similar facts and objections, the court has combined these two cases for purposes of this decision.

[2] The remaining statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), unless otherwise noted.

[3] The "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" for use in Chapter 13 was introduced with BAPCPA in October 2005 as Interim Form B22C.  When the Official Forms were adopted, Interim Form B22C became known as Official Form 22C.  For purposes of this decision, the terms are interchangeable.

2

after December 10, 2006.[4]

Form B22C indicates that Paley has current monthly income of $544.92 and annual income of $6,539.04. As a result, Paley is a "below median income debtor."[5] Meanwhile, according to Paley's schedule I (Current Income), at the time of filing, she had monthly income of $1,384, consisting of $117 net income from part-time employment, $992 from social security, and $275 from a pension or other retirement income. Paley's schedule J (Current Expenditures) shows monthly net income of $139. Paley acknowledges on her Form B22C that her applicable commitment period ("ACP") is 36 months.

Paley's Chapter 13 plan proposes monthly payments of $139 for nine months, resulting in a plan base amount of $1,251. Paley's plan indicates she agreed to pay her attorney $2,000; $825 was paid, leaving a balance of $1,175 to be remitted through the plan. The plan also provides for Paley to continue to pay her sole secured creditor directly in connection with a car loan. Lastly, the plan estimates Paley's general unsecured debt to be $10,773 and proposes no distribution to this class.

### Millington (Case No. 06-12046)

The facts of the *Millington* case are not in dispute. Millington filed a Chapter 13 petition on August 14, 2006. On the same day, Millington filed her plan, schedules, and Form B22C.

---

[4] Section 727(a)(8) of the Bankruptcy Code provides, in part, that "[t]he court shall grant the debtor a discharge, unless . . . (8) the debtor has been granted a discharge under this section . . . in a case commenced within 8 years before the date of the filing of the petition . . . . 11 U.S.C. § 727(a)(8).

[5] Federal Rule of Bankruptcy Procedure 1007(b)(6) requires that all Chapter 13 debtors complete Parts I and III of Official Form 22C to calculate a debtor's current monthly income and to determine whether a debtor's annualized current monthly income is above or below the median family income of similarly-sized households for the applicable state.

Before commencing her Chapter 13 case, Millington filed a Chapter 7 petition on July 27, 2000 (Case No. 00-14088), and received a discharge on December 5, 2000. Thus, she is ineligible to file for Chapter 7 relief again until after July 27, 2008.[6]

Pursuant to her Form B22C, Millington has current monthly income of $1,700 and annual income of $20,400. Her monthly income consists of $800 from social security disability and $900 from pension or retirement income. According to her schedule J, she has monthly net income of negative $88. Based on her income, Millington is a "below median income debtor,"[7] and she acknowledges on Form B22C that her ACP is 36 months.

Millington's Chapter 13 plan proposes $50 per month for 12 months for a base amount of $600. This amount will be sufficient to pay only her attorney's fees and the Trustee's statutory commission. Millington scheduled unsecured debt of $14,060.19. Under Millington's proposed plan, she will continue to pay her secured car loan directly to the lender, and unsecured creditors will not receive a distribution.

**Procedural History**

The Trustee filed an objection to Paley's plan on May 4, 2006, and an objection to Millington's plan on October 12, 2006. The court heard oral argument on the Trustee's objection in Paley's case on September 21, 2006, and in Millington's case on October 19, 2006. At the conclusion of oral argument in both cases, the court requested the parties to file memoranda of law in support of their respective positions. On October 15, 2007, in accordance

---

[6]*See* note 4, *supra*.

[7]Millington appears to have improperly included her Social Security Disability income on Form B22C. However, even with this amount included, Millington's income is still below the applicable state median income.

with its recently entered Memorandum-Decision and Order in *In re Green*, 378 B.R. 30 (Bankr. N.D.N.Y. 2007), the court issued an Interim Order in each case overruling the Trustee's objection to confirmation based upon each Debtor's proposed plan term not coinciding with their respective ACP. The Interim Orders further directed the parties to file additional memoranda addressing whether the Debtors' plans comport with the good faith requirement contained in §1325(a)(3). The final submissions were filed on December 7, 2007, at which time these matters were taken under advisement.

## ARGUMENTS

The Trustee states that neither plan is proposed in good faith. She argues that each case is a disguised Chapter 7 case designed to satisfy attorney's fees and nothing else. The Trustee asserts that in the bankruptcy world, one must give something to get something, and the Debtors are giving at a Chapter 7 level but getting at a Chapter 13 level. She further argues that allowing ineligible Chapter 7 debtors to, in effect, file another Chapter 7 under the color of a Chapter 13 petition frustrates the will of Congress and renders § 727(a)(8) meaningless.[8] While the Trustee does not question the amount of the Debtors' proposed monthly plan payments, she is troubled by the proposed length of the Debtors' plans. The Trustee notes that by committing to a slightly longer period of time, unsecured creditors in both cases would realize a meaningful return.

The Trustee argues that the concept of good faith as embodied in Judge Gerling's decision, *In re Corino*, 191 B.R. 283 (Bankr. N.D.N.Y. 1995), which homogenizes good faith factors from several cases, is alive and well. The Trustee goes on to enumerate the so called

---

[8]*See* note 4, *supra*.

"Estus factors" considered and analyzed by Judge Gerling. Based upon the Trustee's analysis of the factors and the circumstances surrounding each Debtor's plan, the Trustee concludes the instant plans have not been filed in good faith. More specifically, the Trustee asserts consideration of the following factors lends credence to her conclusion: the amount of the Debtors' proposed payments and the amount of the Debtors' surplus; the duration of the plans; the extent of preferential treatment of creditors; the type of debt sought to be discharged and whether any such debt is potentially nondischargeable in Chapter 7; as well as the frequency with which the Debtors have sought relief under the Bankruptcy Code.

Paley responds that the means test under BAPCPA has rendered the concept of good faith obsolete. She further states that even if there is still a good faith requirement, she is squarely within its boundaries. Paley argues that she lives simply and has both a modest income and lifestyle. She asserts she has no non-exempt property and filed her Chapter 13 case to deal with zealous creditors.

Millington argues that the court should adopt a totality of the circumstances test to determine what is or is not good faith, rather than resort to an obsolete punch list of factors. Millington asserts that the court should find her plan to have been filed in good faith based upon the following facts: she has no disposable income, she is retired, her income is limited to social security disability and pension, and her exempt assets are meager.

## DISCUSSION

### I. Good Faith

Section 1325(a)(3) states that "[e]xcept as provided in subsection (b), the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means

forbidden by law . . . . 11 U.S.C. § 1325(a)(3). Good faith is not defined by the Code but, nonetheless, the phrase has enjoyed a rich and colorful history. After the Code was passed in 1978, many courts relied on § 1325(a)(3) and its good faith mandates to achieve whatever result those courts wanted regarding the amount to be funded into a plan for the benefit of creditors. Ultimately, a number of circuits pronounced multi-factor tests to help confirm whether the requirement of good faith was satisfied. *See In re Kitchens*, 702 F.2d 885 (11th Cir. 1983); *In re Estus*, 695 F.2d 311 (8th Cir. 1982); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982).[9]

Congress amended § 1325 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (BAFJA). BAFJA added subsection (b) to § 1325 which provided that if the trustee or an unsecured creditor objected to confirmation, the court could not confirm the plan unless the creditor was to receive payment in full or, alternatively, the debtor satisfied the "ability to pay test;" that is the debtor committed all of his projected disposable income to the plan for at least three years. By adding this formula, many of the earlier good faith checklists were narrowed, as § 1325(b)'s "ability to pay" criteria subsumed many of the factors. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987). What remained of good faith was a case by case analysis of the totality of the circumstances surrounding a plan. *Connelly v. Bath National Bank (In re Connelly)*, No. 93-CV-6449L, 1995 WL 822677, at *3 (W.D.N.Y. Apr. 13, 1995) (citation omitted).

The totality of the circumstances test requires an examination into all relevant circumstances of a case including:

---

[9] For an exhaustive case law analysis see KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY app. at A-57 (3d ed. 2000 & Supp. 2006).

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn, and likelihood of future increases in income; (3) the duration of the plan; (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged, and whether any such debt is potentially nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Code; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief and; (11) the burden which the plan's administration would place upon the Chapter 13 trustee.

*In re Corino*, 191 B.R. 283, 289 (Bankr. N.D.N.Y. 1995) (citations omitted).[10]

The inquiry is broad in scope, ultimately converging on whether or not there has been an abuse of the provisions, purpose, or spirit of the Bankruptcy Code. *Id.* At the core of the inquiry is:

> [W]hether the debtor came to bankruptcy court seeking a fresh start under Chapter 13 protection with an intent that is consistent with the spirit and purpose of that law — rehabilitation through debt repayment — or with an intent contrary to its purposes — debt avoidance through manipulation of the Code. *In re McGovern*, 297 B.R. 650, 660 (S.D. Fla. 2003). In other words, a finding of good faith requires "honesty of intention" by the Debtor. *In re Ochs*, 283 B.R. 135, 137 (Bankr. E.D.N.Y. 2002) (citing *Johnson v. Vanguard Holding Corp.* )(*In re Johnson*), 708 F.2d 865, 868 (2d Cir. 1983)).

*In re Edwards*, No. 03-10018, 2004 WL 316418, at *10 (Bankr. D.Vt. Feb. 13, 2004).

## II. Good Faith and BAPCPA

BAPCPA has not ended the good faith/projected disposable income analysis. On one end

---

[10] Judge Gerling noted that "[a]lthough modified by *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987), the *Estus* test continues to be widely used. *Zellner* added the following factors: whether debtor has stated his debts and expenses accurately, whether the bankruptcy court has been misled, or whether the debtor has manipulated the Code. *Id.* at 1227." *In re Corino*, 191 B.R. 283, 289 n.10.

of the spectrum are cases such as *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C. 2006), and *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006). In *Barr*, an above-median debtor, whose Form B22C showed negative disposable income, proposed a plan with a 0% dividend to unsecured creditors, despite the fact that the debtor would be left with a $513 surplus each month according to debtor's actual income and expenses reflected on schedules I and J. The court overruled the trustee's objection to confirmation holding that the debtor's ability to pay must be determined with reference to § 1325(b), not § 1325(a)(3). *In re Barr*, 341 B.R. at 186. Similarly, in *Alexander,* the court held that disposable income must be determined under § 1325(b), and not § 1325(a)(3). *In re Alexander*, 344 B.R. at 752.

Disagreeing with the rigidity inherent in the *Barr* and *Alexander* decisions, another bankruptcy court held that the requirement of good faith under § 1325(a)(3) is not rendered moot by narrow compliance with the provisions of § 1325(b). *In re Lasota*, 351 B.R. 56, 59-63 (Bankr. W.D.N.Y. 2006). In the *Lasota* case, the debtors had $1,200 in surplus monthly income over and above their "current disposable income" as determined on their Form 22C.[11] *Id.* at 57. The debtors sought to put that surplus, reflected on their schedules I and J, in the bank while discharging 61% of $16,000 in unsecured debt. *Id*. In sustaining the trustee's objection to confirmation, the *Lasota* court noted that if Congress desired to rule out good faith inquiries with the enactment of the BAPCPA, it could have affirmatively done so. *Id*. at 62.

Along similar lines, although a bankruptcy court found that the debtor's retirement contributions passed muster under § 1325(b), despite being substantially more than his proposed

---

[11]*See* note 3, *supra*.

distribution to unsecured creditors, it noted:

> While it is apparent that Congress removed certain streams of income from being considered disposable income by exemption or deduction, it does not necessarily follow that Congress intended to handicap the courts' good faith inquiries or unintentionally create a proverbial "loophole."
>
> . . . .
>
> BAPCPA does not direct a court to abandon viewing the totality of the circumstances, nor impose a requirement that a court blind itself to the full picture of a debtor's finances.

*In re Shelton*, 370 B.R. 861, 867 (Bankr. N.D.Ga. 2007). The *Shelton* court ultimately denied confirmation based on a lack of sufficient evidence to rule whether the debtor's plan satisfied the good faith requirement of § 1325(a)(3). *Id*. at 868-69.

Clearly, Congress did not intend to abrogate the good faith requirement of § 1325(a)(3) with the passage of BAPCPA. In fact, BAPCPA went even farther down the good faith highway by adopting § 1325(a)(7), which requires the petition itself to be filed in good faith as a prerequisite to confirmation. Satisfaction of § 1325(b) does not displace the good faith analysis required under § 1325(a)(3). Plans must still be proposed in good faith to be confirmed. The current state of Chapter 13 abounds in good faith checks and balances to protect creditors as well as the sanctity of the process.

While this court harbors no doubts about the real world bona fides of the individuals involved in these cases, their respective plans do not enjoy that status. Reduced to their cores, we have two cases with debtors ineligible for Chapter 7 discharges seeking another round of debt forgiveness. Chapter 13 is titled "Adjustment of Debts of an Individual with Regular Income." The Debtors are not adjusting anything, much less debt; they are cancelling and eliminating the claims of creditors while simply paying their attorneys. Under the theories advanced by the

Debtors, carried to an absurd extreme, if they had paid their respective attorneys in full up front, they could have proposed a plan of $0 for zero months and demanded a Chapter 13 discharge.

In looking at the totality of the circumstances surrounding the Debtors' plans, the court need not perform an exhaustive analysis of the factors set forth in *Corino*. A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code. These cases, basically Chapter 7 cases hidden within Chapter 13 petitions, blur the distinction between the chapters into a meaningless haze. To allow them to go forward would, in effect, judicially invalidate § 727(a)(8)'s requirement of an eight year hiatus between Chapter 7 discharges and replace it with either the four year break required by § 1328(f)(1),[12] or the two year gap mandated by § 1328(f)(2).[13] The court need not decide what would hypothetically satisfy good faith under § 1325(a)(3), only that these plans do not.

## CONCLUSION

Based upon the foregoing, the Trustee's objections are sustained, and confirmation of the Debtor's plans is denied without prejudice.

It is SO ORDERED.

Dated:    6/3/08                                   /s/ Robert E. Littlefield, Jr.

---

[12] Section 1328(f)(1) states that a debtor shall not receive a chapter 13 discharge "if the debtor has received a discharge — (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter . . . .  11 U.S.C. § 1328(f)(1).

[13] Section 1328(f)(2) provides that a debtor shall not receive a chapter 13 discharge "if the debtor has received a discharge — (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order."  11 U.S.C. § 1328(f)(2).

Hon. Robert E. Littlefield, Jr.
U.S. Bankruptcy Judge